IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TERRILL POPPELL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-10-03549 |
| UNITED STATES OF AMERICA, *et al.*, | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Terrill Poppell ("Plaintiff" or "Poppell") brought this medical malpractice action against the United States of America ("the United States") and the United States Department of Veterans Affairs, three individual physicians; and the University of Maryland Medical Center under the Federal Tort Claims Act ("FTCA").[1] Plaintiff's Complaint alleges that Defendants' negligent performance of a second hip replacement surgery, on August 15, 2007, caused him to suffer serious and severe pain as well as required him to obtain additional corrective surgery. Pending before this Court is Defendant United States of America's Motion to Dismiss for Lack of Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (ECF No. 19). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6

[1] Although Plaintiff's Complaint does not mention the Federal Tort Claims Act, a claim for medical malpractice against the federal government and its agents necessarily arises under that act. *See* 28 U.S.C. §§ 1346(b), 2401(b), 2671-80. Doctors Roger Sterling, Terrance Kim and Steven Thompson are the three named individual physicians in this case. *See* Pl.'s Compl., ECF No. 2, at ¶¶ 2-4, 19. According to the Baltimore Veterans Affairs Medical Center ("VAMC"), Doctors Kim and Thompson were residents with the VAMC at the time of the surgery and were therefore federal employees for purposes of the FTCA. *See* Mem. in Supp. of the United States of America's Mot. to Dismiss, ECF No. 19-1, at n. 3. This is not the case for Doctor Sterling as he was under contract with the University of Maryland Medical Center when he served as an attending physician at the VAMC during the surgery. *Id.*

(D. Md. 2011). For the reasons that follow, that Motion to Dismiss for Lack of Jurisdiction (ECF No. 19) is DENIED.

## BACKGROUND

In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Plaintiff is a "61 year old male with a medical history of avascular necrosis, Steven Johnson Syndrome, Herpes, HIV, Hepatitis C, Aseptic Bony Necrosis and Neurotic Depression." Pl's Compl., ECF No. 2, at ¶ 10. Plaintiff brings this medical malpractice action against the Defendants under the FTCA and the Maryland common law of torts for negligently performing a second total hip replacement operation on Plaintiff on August 15, 2007. *Id*. at ¶¶ 24-26. Plaintiff seeks damages in excess of $30,000.00. *Id*. at ¶ 26.

In May 2006, Plaintiff, a patient at The Baltimore VA Medical Center ("VAMC"), was suffering from avascular necrosis. *Id*. at ¶ 10-11. Dr. Kenzora, an Orthopedic surgeon of the VAMC, instructed him to have total hip replacement surgery both at that time and again in July 2006 due to the progression of his disease. *Id*. Although Poppell wanted to avoid surgery, the latter became necessary and he underwent his first left total hip replacement surgery on January 17, 2007.[2] Pl's Compl., ECF No. 2, at ¶ 14. Defendant, Steven Thompson, was one of the surgeons who performed this surgery. *Id*. Poppell was discharged in stable condition on January 24, 2007. *Id.* at ¶ 16. Poppell's medical records reveal that, on subsequent visits with therapists and doctors, he stated that he still had a lot pain and that he was pigeon-toed. *See Id*. at ¶¶ 17-78;

---

[2] Poppell's medical records show that he underwent a "successful right hip replacement" surgery in August of 2001. Exhibit 1, at 389.

*see also* Exhibit 1 (Selected VA Medical Record filed Under Seal), Mem. in Supp. of the United States of America's Mot. to Dismiss, ECF No. 20 at 389. These same therapists and doctors, noted an internal rotation of his left leg, and offered him shoe lifts to correct his leg-length discrepancy. Pl's Compl., ECF No. 2, at ¶¶ 15-18. A review of his x-rays demonstrated, however, that his hips and pelvis were not misaligned. Exhibit 1, at 389. He was prescribed cortisone injections to provide relief and an orthopedic surgeon recommended a larger size hip to correct Poppell's problem and reduce his pain. *See* Pl's Compl., ECF No. 2, at ¶ 18.

On August 15, 2007, Poppell underwent a second left hip replacement surgery. *Id.* at 19. Defendants Robert Sterling, Terrance Kim and Steven Thompson performed the surgery. *Id*. Poppell was discharged in stable condition on August 20, 2007. *Id*. at ¶ 20. He then followed-up with his treatment through outpatient physical therapy, where his therapist noted his continued leg-length discrepancy. *Id*. at 21. From September 2007 to December 2008, Poppell's medical records reflect that Poppell continued to seek medical treatment in relation to his surgeries. *See generally* Exhibit 1. On October 9, 2007, Poppell indicated that he was "happy with the outcome of his surgery," but also told the physician that he suffered from pain after long walks and was still pigeon-toed. Exhibit 1, at 930. Subsequent medical reports indicate that Poppell continued to seek advice concerning his increasing pain in his left hip and leg. *See* Exhibit 1. Throughout that time, the doctors who had previously treated him also treated the pain associated with the symptoms and even recommended that he see a psychologist to deal with his frustration with his chronic pain. *Id.* at 922. During his pain treatment, Poppell's medical records indicate that the doctors represented to Poppell that these were natural complications resulting from his surgery. Pl.'s Opp. to Defs.' Mot. to Dismiss, at ¶ 10. It was not until December of 2008, that Doctor Pellegrini of the University of Maryland Medical Center

("UMMC") informed Plaintiff that his pain and internal rotation were due to the incorrect size of his prosthesis. Pl's Compl., ECF No. 2, at ¶23. Doctor Pellegrini recommended an intervention in order to "correct the maladjustment of the hip" from the August 15, 2007 surgery.

On May 17, 2010, Plaintiff filed an administrative tort claim with the U.S. Department of Veterans Affairs ("VA") alleging that the August 15, 2007 operation was negligently performed. Exhibit 2 Decl. of Melissa Mack, at ¶5. Defendant, the United States, removed this action from the Health Care Alternative Dispute Resolution Office[3] to this Court on December 20, 2010. *See* Notice of Removal, ECF No. 1. The United States then filed its Motion to Dismiss for lack of subject matter jurisdiction on January 21, 2011. Mot. to Dismiss, ECF No. 19. Plaintiff filed his response on February 28, 2011. Pl.'s Opp. to Def.'s Mot. to Dismiss, ECF No. 25. Finally, the United States filed their Reply to Plaintiff's Opposition on March 10, 2011. Reply Mem. in Supp. of the United States of America's Mot. to Dismiss, ECF No. 27.

## STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson,* 367 F. Supp. 2d 792, 799 (D. Md. 2005). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir. 1999). In determining whether jurisdiction exists, the district court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768-769 (4th Cir. 1991). Motions to dismiss for

[3] Pursuant to the Maryland Health Care Malpractice Claims Act, claims "against a health care provider for medical injury" must be submitted to the Health Care Alternative Dispute Resolution Office prior to any judicial action. Md. Code Ann, Cts. & Jud. Proc. §§ 3-2A-02, *et seq.*

lack of subject matter jurisdiction are appropriate where a claim fails to assert facts upon which jurisdiction may be based. *See Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996). Where a plaintiff has failed to exhaust administrative remedies before bringing a claim, the action should be dismissed under Rule 12(b)(1). *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd* 85 Fed. Appx. 960 (4th Cir.2004).

ANALYSIS

Defendant, the United States, contends that Plaintiff's tort claims should be dismissed for lack of subject matter jurisdiction. The United States claims that Plaintiff failed to satisfy the filing requirement before initiating a lawsuit under the Federal Tort Claims Act. *See, e.g.*, 28 U.S.C. § 2675(a) (mandating the filing of an administrative claim); *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir., 1986) ("It is well-settled that the requirement of filing an administrative claim is jurisdictional and may not be waived."); *Plyer v. United States*, 900 F.2d 41, 42-43 (4th Cir. 1990). The United States, therefore, argues that it has not waived sovereign immunity with respect to Plaintiff's tort claims because failure to file a timely administrative law claim results in non-waiver of the United States sovereign immunity. *See, e.g.*, *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").

In accordance with the doctrine of sovereign immunity, an action against the federal government can only be maintained where it has expressly consented to suit. *See Welch v. United States*, 409 F.3d 646, 650-51 (4th Cir. 2005). When the United States waives its sovereign immunity, the terms of its waiver define the extent of a court's jurisdiction and a court may not extend or narrow the waiver beyond that intended by Congress. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Smith v. United States*, 507 U.S. 197, 203 (1993).

The intent of Congress in enacting the FTCA was to waive sovereign immunity in a limited set of suits. Thus, in order to bring a claim against the United States, the burden is on the plaintiff to prove that the claim is cognizable under the FTCA such that sovereign immunity has been abrogated. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). If the plaintiff fails to meet this burden, the suit must be dismissed for lack of jurisdiction. *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001).

In order to bring a claim under the FTCA, a Plaintiff must first present the claim in writing to the appropriate federal agency "within two years after such claim accrues." 28 U.S.C. § 2401(b). The Supreme Court has held that the statute of limitations accrues when a plaintiff has suffered an injury and knows who has inflicted it. *United States v. Kubrick*, 444 U.S. 111, 122 (1979). Consistent with this principle, the United States Court of Appeals for the Fourth Circuit has held that in the context of medical malpractice, "accrual of a claim . . . occurs when the plaintiff became aware - or would have become aware through the exercise of due-diligence - both of the existence of injury and of its cause." *Kerstetter v. United States*, 57 F.3d 362, 364 (4th Cir. 1995) (citing *Kubrick*, 444 U.S. at 120). Knowledge of the "precise medical cause" of the injury is not necessary, "[s]o long as plaintiff knows the 'critical fact of 'who has inflicted the injury,' [and suspects that it may have been inflicted negligently], he can act to protect his rights by inquiring whether the injury was" in fact the result of negligence. *Kerstetter*, 57 F.3d at 365. The issue then becomes when does one have knowledge, or should have knowledge, of the injury and of who caused it.

In *Kubrick*, a veteran brought suit against the United States under the FTCA for medical malpractice relating to a 1968 surgery on his infected right femur. *Kubrick*, 444 U.S. at 113. After surgery, the doctors used neomycin to continue treating the infected area. *Id*. Six weeks

later, the plaintiff experienced ringing in his ears and then loss of hearing resulting in bilateral nerve deafness. *Id.* Approximately eight months later, in January 1969, an ear specialist suggested that his deafness was potentially due to the use of neomycin during his surgery. *Id.* at 15. About two years later, in June 1971, another ear specialist confirmed that the administration of the neomycin caused the deafness. *Id.* The plaintiff then waited until 1972 to file his administrative tort claim. *Id.* The Supreme Court held on these facts that the plaintiff became aware of the cause of the injury, when the first doctor suggested a link between the neomycin and the deafness. *Kubrick*, 444 U.S. at 123. Therefore, accrual of the statute of limitations began when Kubrick was both aware of his deafness and of the fact that the neomycin might be its cause.

In *Kerstetter*, the Fourth Circuit held that accrual of the statute of limitations began when the parents were advised that a surgery had caused their child's permanent kidney failure. *Kerstetter,* 57 F.3d 362 at 366. This case involved surgery to the abdomen of a newborn child in order to remove a "malignant tumor." *Id*. at 363. After the surgery, the child was unable to urinate and the surgeon opined that this might be a normal [and temporary] shock response." *Id*. A couple of months later, however, the Kerstetters learned that the loss of kidney function was permanent. *Id*. Subsequently, their child received two kidney transplants: one that same year and another one four years later when the first transplant failed. *Id.* A year after the second kidney transplant the Kerstetters filed an administrative medical malpractice claim with the Department of the Navy concerning their child's first surgery. *Id*. Because about five years elapsed between the time when the Kerstetters knew that the surgery had resulted in their child's permanent kidney failure and the filing of their administrative claim, the Fourth Circuit held that their FTCA claim was time barred. *Kerstetter*, 57 F.3d 362 at 364. Therefore, the court held that

they had knowledge of the cause of the injury when they knew that the loss of kidney function was permanent.

Furthermore, the Fourth Circuit noted in *Hahn v. United States*, that "a person is [not] automatically put on inquiry notice merely from the fact that he received medical treatment and did not make a complete recovery." *Hahn v. United States*, 313 Fed. Appx. 582 (4th Cir. 2008). This case involved a veteran diagnosed with Guillain-Barré Syndrome ("GBS"). *Id.* at 583. He was treated for his severe weakness in his limbs but did not receive the complete dose of IVIg treatment.[4] *Id*. Upon being discharged, he was informed that he could expect to feel some "residual weakness after receiving treatment." *Id.* Nevertheless, this weakness lasted longer than normal and the patient began to seek counsel from other doctors. *Id.* at 584. The Fourth Circuit noted that on several occasion, he was asked if he had been treated with IVIg and that when he responded in the negative, the doctors "either responded by saying "Oh?" or remained completely silent." *Id.* However, on none of these occasions did the plaintiff present these doctors with his medical records. *Hahn v. United States*, 313 Fed. Appx. at 584. The patient only learned that his treatment for GBS was incomplete three years later after experiencing continued weakness and seeking to enroll in a clinical drug trial, that. *Id*. Accordingly, the Fourth Circuit held that "a reasonable person exercising due diligence under the same circumstances would have provided the doctors with his medical records and asked [them] whether some aspect of his treatment might have caused his incomplete recovery." *Id*. at 586.

It therefore follows, that knowledge of the cause of an injury for accrual of the statute of limitations purposes exists when a person knows, or should have known upon furnishing his medical records to his doctors, that the injury is not a temporary complication from the surgery

---

4 After being diagnosed, he had been transferred to the intensive care unit to receive five days of IVIg treatment, but only received treatment for one day. *See id.*

or treatment, but a permanent injury relating to the surgery or treatment. Thus, as long as a patient is advised that his injuries are complications from the treatment or surgery and will resolve in time, the statute of limitations is not triggered.

In the present case, the Plaintiff underwent two total hip replacement surgeries of his left hip on January 17, 2007 and then later on August 15, 2007. After the first operation Plaintiff consulted physicians and therapists to assist him in his recovery. Some noted an internal rotation of the left leg. Although x-rays of the hips and pelvis showed no misalignment, his doctor recommended a larger size hip to correct the internal rotation problem. After the August 15, 2007, where a larger size hip was inserted, Plaintiff first was satisfied with the operation but continued to notice the rotation and began to experience some pain. From then until December 2008, his pain became incrementally worse. Plaintiff was treated with pain medication to help him cope. The pain also began to affect his mood causing his doctors to refer him to a psychologist. Throughout that time, however, none of his doctors discovered any problem with his hip replacement and he was lead to believe that these were complications from the surgery which would resolve. It is only during the month of December 2008 that Doctor Pellegrini informed him that his pain was due to the inadequate size of his prosthesis.

In construing the facts in the light most favorable to the Plaintiff, *Edwards*, 178 F.3d at 244, the Plaintiff became aware of the cause of his injury in December of 2008 when Doctor Pellegrini advised him that the prosthesis was inadequately sized, thereby resulting in the pain he had been experiencing. Thus, the statute of limitations for FTCA purposes began to accrue in December of 2008. Because Plaintiff filed his administrative claim with the Veterans Administration on May 17, 2010, he satisfied the filing requirement within two years after his claim accrued. Consequently, the Defendant United States of America's Motion to Dismiss for

Lack of Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is DENIED.

CONCLUSION

For the reasons stated above, Defendant United States of America's Motion to Dismiss for Lack of Jurisdiction (ECF No. 19) is DENIED.

A separate Order follows.

Dated: September 21, 2011

/s/___________________________________
Richard D. Bennett
United States District Judge